The Circuit Court of Greene County, on November 11, 1998, entered a final judgment in two consolidated class actions styledTidmore v. State Mutual Insurance Co. et al. (CV-95-066) and Bellv. State Mutual Insurance Co. et al. (CV-96-040) (hereinafter "theTidmore-Bell actions"). That judgment was based upon a settlement entered in those class actions. After the Greene Circuit Court had entered its final judgment in the Tidmore-Bell actions, three persons who had been members of the Tidmore-Bell class, Philip M. Cavender, Grover Craig Gilchrist, and Mary Theresa Gilchrist (hereinafter, "the Cavender plaintiffs"), acting by their attorneys Steven L. Nicholas and Michael S. McGlothren (hereinafter, "the Cavender attorneys"), filed an action in the Circuit Court of Mobile County (that action is hereinafter referred to as "the Mobile action"). The defendants in the Mobile action were State Mutual Insurance Company (which had been a defendant in the Tidmore-Bell actions) and certain individuals, Delos Yancey, Jr., Delos Yancey III, Ann Rodgers, and Rodney Hale (hereinafter, "the individual defendants"). The plaintiffs in the Mobile action alleged that the individual defendants had fraudulently, wantonly, negligently, or intentionally breached their fiduciary duty to State Mutual policyholders by self-dealing and conspiring to obtain illegal profits. State Mutual and the individual defendants removed the Mobile action to the United States District Court for the Southern District of Alabama.
State Mutual then filed a motion in the Greene Circuit Court, to enforce the terms of the class-action settlement in theTidmore-Bell actions. The Greene Circuit *Page 865 
Court enjoined the Cavender plaintiffs and the Cavender attorneys from prosecuting the Mobile action and imposed sanctions on them in the amount of $236,360. The imposition of sanctions was based on the Greene Circuit Court's conclusion that the Cavender plaintiffs and their attorneys, in filing the Mobile action, had violated the final judgment entered in the Tidmore-Bell actions. The Cavender plaintiffs and the Cavender attorneys appeal (the appeal relating to the Tidmore action (CV-95-066) is case no. 1980345, and the appeal relating to the Bell action (CV-96-040) is case no. 1980346).[1] After the Cavender plaintiffs and the Cavender attorneys had filed their appeals the Tidmore plaintiffs filed appeals, also directed toward the trial court's ruling imposing sanctions and enjoining the Cavender plaintiffs and the Cavender attorneys; they ask this Court to declare whether the claims of the Cavender plaintiffs were precluded. However, because the injunction and sanction order issued by the Greene Circuit Court in no way pertained to the Tidmore plaintiffs, the Tidmore appeals (cases 1980637 and 1980638, relating to CV-95-066 and CV-96-040) are dismissed for lack of standing. In case no. 1980345 and case no. 1980346 (the appeals by the Cavender plaintiffs and attorneys), we reverse and remand.
In the Mobile action, the Cavender plaintiffs alleged that in December 1995, State Mutual sold Atlas Life Insurance Company, an Oklahoma-based stock insurance company, to North American Financial Services for a grossly understated value. North American Financial Services was formed and was controlled by the chairman of the board of State Mutual, Yancey, Jr.; the president of State Mutual, Yancey III; and the other individual defendants. In July 1998, a month after the settlement was reached in theTidmore-Bell actions, and with no apparent material change in the economic circumstances of Atlas Life, North American Financial Services, controlled by the individual defendants, sold Atlas Life for $31.5 million, which was several times the amount for which North American Financial Services had purchased it.
The Cavender plaintiffs are policyholders of State Mutual, a mutual insurance company. They alleged in the Mobile action that the sale of Atlas Life constituted an illegal self-dealing by corporate insiders; that the proper procedures were not followed in the sale to North American Financial Services; and that proper disclosures regarding the sale had not been made to the policyholders. Whether the Cavender plaintiffs, as individuals, have standing to bring the Mobile action is not an issue in this appeal. The issues before us are whether the Mobile action was barred by the doctrine of res judicata or the release agreed to by the Tidmore-Bell plaintiffs, which was incorporated into the final judgment in the Tidmore-Bell actions, and whether the sanctions against the Cavender plaintiffs and their attorneys were proper.
The Tidmore-Bell actions were class actions filed by State Mutual policyholders against State Mutual, alleging fraud. TheTidmore-Bell plaintiffs sought relief on the basis that State Mutual had made fraudulent misrepresentations to them to entice them to purchase their policies. Specifically, the policies they purchased were known as "vanishing-premium" policies, because dividends generated by the policies were supposed to reduce the policyholders' future premium payments. The Tidmore-Bell actions alleged that the actual performance of the policies did not match the projections used to entice the plaintiffs to purchase the policies. The parties in the Tidmore-Bell actions *Page 866 
reached a settlement. As part of the settlement agreement, the class representatives signed a release. The Greene Circuit Court incorporated that settlement and release into a final judgment on November 11, 1998. The release covered all members of theTidmore-Bell class, which included the Cavender plaintiffs.
State Mutual argues that the claims made in the Mobile action were adjudicated in the Tidmore-Bell actions and that the Mobile action is therefore barred by the doctrine of res judicata. The doctrine of res judicata prohibits the relitigation of any cause of action that has been litigated in a prior action or that could have been litigated in the prior action. Carol v. Buttram, [Ms. 1971292, June 11, 1999] ___ So.2d ___ (Ala. 1999); Century 21Preferred Properties, Inc. v. Alabama Real Estate Comm'n,401 So.2d 764 (Ala. 1981). Four elements are necessary for the doctrine of res judicata to bar a subsequent action: (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of parties, and (4) with the same cause of action in both lawsuits. Equity Resources Mgmt. v.Vinson, 273 So.2d 634 (Ala. 1998). "If these elements are present, then any issue that was, or could have been, adjudicated in the prior action is barred from further litigation." Croft v.Pate, 585 So.2d 799, 800 (Ala. 1991). The individual defendants were not parties in the Tidmore-Bell actions. However, the Cavender plaintiffs and State Mutual were parties in theTidmore-Bell actions; it is not necessary to decide whether this fact satisfies the substantial-identity-of-parties element of res judicata, because the Mobile action was not based on the same cause of action that the Tidmore-Bell actions were based on. TheTidmore-Bell plaintiffs sought relief based on allegations of fraudulent misrepresentations by State Mutual. The Cavender plaintiffs individually seek damages based on allegations of illegal self-dealing by corporate insiders. These are not the same causes of action. There is no res judicata bar to the Mobile action because the fourth element required for the operation of the doctrine of res judicata is not present in the Mobile action.
Did the trial court err when it held that the Tidmore-Bell
settlement and the Tidmore-Bell release precluded the Mobile action?
We review the release in its entirety, together with the written notice given to the Tidmore-Bell class members; that notice was incorporated by reference as an exhibit to the settlement, before the settlement was entered and the release executed. The settlement agreement, which we do not find to be ambiguous, describes a number of specific types of claims (none of which includes the cause of action on which the Mobile action was based) and then includes a catch-all paragraph 5, which reads:
 "In connection with this Release, Plaintiffs and the Class Members acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released herein. Nevertheless, it is the intention of Plaintiffs and the Class Members in executing this Release fully, finally, and forever to settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any Actions)."
(Emphasis added.)
State Mutual contends that the following two provisions of the release cover the claim presented in the Mobile action: (1) a provision reading, "[This release covers] any or all acts, omissions, facts, matters, transactions, occurrences or oral or written statements or representations in connection with ordirectly or indirectly relating to the Settlement of the Actions" *Page 867 
(emphasis added); and (2) a paragraph reading:
 ". . . Release. Effective as of the Final Settlement Date, Plaintiffs and all Class Members hereby expressly agree that they shall not now or hereafter institute, maintain or assert, against the Releasees, either directly, or indirectly, on their own behalf, on behalf of the Class or any other person, and do hereby release and discharge the Releasees from any and all causes of action, claims, damages, equitable, legal, and administrative relief, interest, demands or rights, whether based on federal, state, local statute or ordinance, regulation, contract, common law, or any other sources, that have been, may be or could be alleged or asserted now in the Actions or in any other court action or before any administrative body (including any state insurance department or other regulatory commission), tribunal or arbitration panel on the basis of, connected with, arising out of, or related to, in whole or in part, the Released Transactions including without limitations: [numerous specific causes of action not applicable in this appeal]."
(Emphasis added except for the emphasis and bold print on the word "Release.") The settlement agreement defines the phrase "Released Transactions" as State Mutual's actions in
 "marketing, declaration, or non-declarations of dividends, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loan, withdrawal and/or termination of the policies or any insurance policy sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of the policies, and, as described in the release and waiver section of this settlement."
(Emphasis added.) Every reference to a claim precluded by the release is accompanied by language that limits the reference so that it refers only to a claim having some connection to the underlying Tidmore-Bell transactions.
The Cavender plaintiffs contend that the Tidmore-Bell release contains a limitation on the extent to which the release precludes future lawsuits. The Cavender plaintiffs argue that the preclusion imposed by the release does not extend to an action alleging illegal self-dealing by the corporate insiders. We agree.
In the final judgment in the Tidmore-Bell actions, the Greene Circuit Court ordered that State Mutual would be released from all claims "which were or could be asserted by or on behalf of any Class members, which relate to the alleged Released Transactions or the released claims as [defined] in the Settlement Agreement." (Emphasis added.) This limitation on the release is similar to the provisions of the release that limit it to the underlying transactions.
In the Tidmore-Bell actions, State Mutual sent notices to the class members describing the limit that the settlement would place on their right to file an action. That notice indicated that the settlement would "prevent any of [the class members] from filing a separate suit against State Mutual based on representations of anykind which may have been made to [them] as to the performance of[their] policy." (Emphasis added.) The notice describes the settlement as relating to fraudulent sales practices. The notice specifically states:
 "[If the settlement is approved, then] the litigation and any and all claims asserted or which could have been asserted by or on behalf of any Class Member regarding the alleged sales practices of State Mutual . . . shall be dismissed in their entirety on the merits and with prejudice. Effective upon the final approval of all aspects of this Settlement by the Circuit Court of Greene County, Alabama and the final, binding affirmance of said approval in the event *Page 868 
of any appeal, Plaintiffs individually and on behalf of the Class, and each Class Member, separately and severally, shall be deemed to have fully, finally, and forever released State Mutual . . . of and for all claims . . . which have been or could be asserted by any Class Member, . . . to the extent such claims, causes of action or liabilities arise from, are connected with, or are in any way based upon or related to any allegation of fraud, misrepresentation, concealment, failure to disclose, or other tortious conduct or breach of duty or breach of contract which occurred in whole or in part before the date of the Final Order and Judgment approving the Settlement, regarding the (a) alleged failure to meet dividend or other projections as to policy performance and (b) the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, lapse, administration or replacement by means of surrender, partial surrender, loans or termination of the Policies described herein or relating in any way directly or indirectly to the sale or solicitation of these policies as described in the allegations in Paragraph IV herein and in the Settlement."
(Emphasis added.) The wording emphasized here limits the release to two areas. First, any future claim relating to mistaken projections would be precluded by the Tidmore-Bell settlement. Second, any future claim relating to fraud in selling policies would be precluded by the Tidmore-Bell release. When the language of a release specifically limits the scope of the release, the release will not bar claims outside the scope of the release.Foreman v. State, 676 So.2d 303 (Ala. 1995).
The release does not refer to a breach of fiduciary duty by the directors or officers unrelated to the selling of the policies. The matter litigated and settled in the Tidmore-Bell
actions related to fraudulent misrepresentations in the course of selling the policies. The matter did not relate to illegal self-dealing by corporate insiders. The Mobile action was brought against the individual defendants because, the Cavender plaintiffs allege, those defendants breached their fiduciary duty by illegally profiting from self-dealing, not because of any kind of fraudulent misrepresentation used to entice the Cavender plaintiffs to purchase policies. It is clear that theTidmore-Bell release does not preclude the Mobile action. We conclude that the Tidmore-Bell settlement agreement does not preclude lawsuits based on alleged illegal self-dealing by corporate insiders, because every reference in the settlement agreement limits that agreement to the subject matter being litigated in the Tidmore-Bell actions.
Did the trial court err when it sanctioned the Cavender plaintiffs and their attorneys?
We review a circuit court's finding of civil contempt under an abuse-of-discretion standard. Baker v. Heatherwood HomeownersAss'n, 587 So.2d 938 (Ala. 1991). "[W]hether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, [the appellate] court will affirm." Stack v. Stack,646 So.2d 51, 56 (Ala.Civ.App. 1994). Having concluded that theTidmore-Bell release did not bar the Mobile action, we must reverse the trial court's order imposing sanctions on the Cavender plaintiffs and their attorneys. The trial court abused its discretion by imposing the sanctions; the Greene Circuit Court cannot sanction the Cavender plaintiffs and their attorneys for violating the Tidmore-Bell release, because their filing and prosecuting the Mobile action does not violate the Tidmore-Bell
release. Because of this holding, we need not address the other issues raised.
1980345 — REVERSED AND REMANDED. *Page 869 
1980346 — REVERSED AND REMANDED.
1980637 — DISMISSED.
1980638 — DISMISSED.
Hooper, C.J., and Maddox, See, Lyons, Brown, and Johnstone, JJ., concur.
[1] After this appeal was filed, the Mobile action was remanded to the Mobile Circuit Court. "[A]ctions taken in a state court immediately become effective again upon remand and have the same effect as if no removal had taken place." Ex parte MetropolitanLife Ins. Co., 707 So.2d 229, 232 (Ala. 1997). Therefore, we must address the merits of this appeal.